UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

DANIEL THORNBERRY,

    Plaintiff,

v.

Z. AHMED, et al.,

    Defendants.

Case No. C 12-6129 YGR (PR)

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT; (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND (3) ADDRESSING PLAINTIFF'S OTHER PENDING MOTIONS**

## **INTRODUCTION**

Plaintiff Daniel Thornberry, a state prisoner currently incarcerated at California State Prison - Sacramento ("CSP-Sacramento"), filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleged that while he was incarcerated at the Correctional Training Facility ("CTF") from 2011 to 2012, Defendants provided constitutionally inadequate medical care for his scoliosis.[1] He named the following Defendants: CTF Chief Executive Officer ("CEO") G. Ellis; CTF Physicians Z. Ahmed and Laurie Hedden; and the "Director of California Correctional Health Care Services." Plaintiff is seeking monetary damages.

In an Order dated February 15, 2013, the Court issued its Order of Service upon finding Plaintiff's claims cognizable as a violation of the Eighth Amendment against Defendants Ellis, Ahmed, and Hedden. (Dkt. 8 at 2.) The Court dismissed Plaintiff's supervisory liability claim against Defendant "Director of California Correctional Health Care Services." (*Id.* at 2-3 (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (no respondeat superior liability under section 1983 solely because a defendant is responsible for the actions or omissions of another).)

Before the Court is Defendants' motion for summary judgment. (Dkt. 29.)

---

[1] Scoliosis is a lateral curvature of the spine. *See* Merriam-Webster Online Dictionary, retrieved August 12, 2014, from http://www.merriam-webster.com/medlineplus/scoliosis.

Also before the Court are several motions filed by Plaintiff, including: a motion for leave to file an amended complaint (dkt. 31); a request for appointment of counsel (dkt. 36); a motion for leave to file a response to Defendants' motion for summary judgment (dkt. 39); and a motion for leave to file a sur-reply (dkt. 40).

For the reasons stated below, Plaintiff's motion to file a response to Defendants' motion for summary judgment is GRANTED; Defendants' motion for summary judgment is GRANTED; and Plaintiff's motion to file an amended complaint, request for appointment of counsel, and motion to file a sur-reply are DENIED.

## DISCUSSION

### I. PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND MOTION FOR LEAVE TO FILE A RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Defendants filed their motion for summary judgment on September 17, 2013 (dkt. 29), as required by this Court's Order of Service on February 15, 2013 and Order Granting an Extension of Time to File Dispositive Motion (dkts. 8, 23). Plaintiff filed his motion for leave to amend the complaint on September 16, 2013 – the day before Defendants' motion for summary judgment was due. (Dkt. 31.) Plaintiff's original complaint had been filed over nine months earlier, on December 3, 2012. (Dkt. 1.)

Plaintiff filed the instant motion for leave to file an amended complaint purportedly because he wishes to include new legal claims and additional prayers for relief due to newly discovered facts. (Dkt. 31 at 2.) Specifically, Plaintiff seeks to amend the complaint to add: (1) additional facts regarding his treatment with Defendants Ahmed and Hedden and other medical professionals in 2011-2012 (dkt. 31-1 ¶¶ 6-20, 34-40, Ex. A); (2) legal argument, including Plaintiff's medical and legal opinions regarding the propriety of his care (*Id.* ¶ 21-33, 41-44, 46); and (3) additional facts and arguments related to Plaintiff's medical condition and subsequent care by other CDCR medical professionals, including physicians from CSP-Sacramento (*Id.* ¶¶ 28-31, 34). Additionally, in the proposed amended complaint, Plaintiff seeks *declaratory* as well as monetary relief. (*Id.* ¶ 21.)

Defendants argue that Plaintiff can introduce the aforementioned additional facts, opinions,

and arguments by way of a response to the pending motion. (Dkt. 33 at 3-4.) Furthermore, they argue that while Plaintiff seeks additional declaratory relief, he does not seek to add *different* claims or parties. (*Id.* at 4 (citing dkt. 31-1 ¶¶ 49-61).) Defendants argue that they "should not be forced to again expend the considerable time, efforts, resources, and costs necessary to respond to a first amended complaint, which in essence only changes the style of the allegations and claims for relief, but not their substance." (Dkt. 33 at 4.) Finally, Defendants assert "[n]othing in Plaintiff's proposed first amended complaint alters the necessity of determining the central issues already raised in his earlier complaint and the filed motion for summary judgment." (*Id.* at 3.) The Court agrees with Defendants. As further explained below, Plaintiff's purported additional legal claims in the proposed amended complaint are substantively identical to his deliberate indifference claim in his original complaint.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." In considering whether to grant or deny a motion seeking leave to amend a complaint, the district court may consider whether there is bad faith, undue delay, prejudice to the opposing party, futility in the amendment, and whether the plaintiff has previously amended his complaint. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). While mere delay in seeking to amend is not grounds to deny amendment, leave need not be granted, where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *Janicki Logging Co. v. Mateer,* 42 F.3d 561, 566 (9th Cir. 1994)*; see also Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) (district court's finding of prejudice to defendants sufficient to deny amendment, because motion to amend came at eleventh hour, when summary judgment pending and discovery period had closed, affirmed as proper exercise of district court's discretion).

Furthermore, liberality with which amendment is usually permitted is tempered in a pauper-prisoner's civil action by the gate-keeping functions in 28 U.S.C. §§ 1915 and 1915A. The rule that a *pro se* litigant's pleadings be liberally construed means that amendment generally is not necessary to amplify the details of a claim or particular theories supporting the claim when the district court has already determined that the earlier pleading sufficed to state a claim for relief.

Here, the Court finds that justice does not require that Plaintiff be permitted to further amend his pleading. First, Plaintiff need not amend his complaint to include more facts or bolster his claims as the Court has already found that his original complaint stated cognizable claims for relief, and it has issued service of the complaint on Defendants (who have since filed a motion for summary judgment). Second, Plaintiff does not now seek to add any new claims that were not in the original complaint. Third, Defendants would be substantially prejudiced by such amendment coming at the eleventh hour, and substantial delay would result if the amendment was granted. As explained above, Plaintiff filed his motion to amend his complaint one day before Defendants' motion for summary judgment was due – when the discovery period has closed. Finally, Plaintiff need not amend his complaint to oppose the summary judgment motion because he has actually filed a motion for leave to file a response to Defendants' motion, and the Court will consider such a response in resolving that motion below.

Accordingly, the Court DENIES Plaintiff's motion for leave to file an amended complaint (dkt. 31); and GRANTS Plaintiff's motion for leave to file a response to Defendants' motion for summary judgment (dkt. 39).

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.   FACTUAL BACKGROUND

The following factual allegations are not disputed, unless specifically noted:

- **August 4 or 11, 2011**: Plaintiff claims that on August 4, 2011, he filed a Healthcare Services Request Form ("HSRF"), stating that he had scoliosis and that it was painful to walk, he requested pain management to alleviate his symptoms. (Dkt. 34 at 3.)[2] Meanwhile, Defendants state that Plaintiff made such a request seven days later, on August 11, 2011. (Dkt. 29-1, Ahmed Declaration ("Ahmed Decl.") ¶ 7.)

- **August 24, 2011**: Defendant Ahmed examined Plaintiff.[3] According to Defendant Ahmed, it appeared that Plaintiff had been suffering from scoliosis since birth, but was only diagnosed at the age of 14.[4] (Ahmed Decl. ¶ 2.) Plaintiff's scoliosis caused him

---

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

[3] Plaintiff claims that the examination took place on August 4, 2011. (Dkt. 34 at 3.) However, the record shows that this examination actually occurred twenty days later, on August 24, 2011. (Dkt. 1 at 45; Ahmed Decl. ¶ 7.)

[4] Plaintiff also suffers from Hepatitis C virus ("HCV") and bipolar disorder. (Ahmed Decl.

4

chronic pain in his lower back, hip and left leg. (*Id.*) After a discussion about Plaintiff's current complaints of pain when he walked, shortness of breath, and chest pain, Defendant Ahmed prescribed Nortriptyline (chronic pain medication), Robaxin (for muscle spasms), and Salsalate (for pain and inflammation). (Ahmed Decl. ¶ 7.)

- **September 1 and 20, 2011**: Plaintiff was examined by CTF Registered Nurse ("RN") Pruitt. On September 1, 2011, Plaintiff submitted another HSRF indicating that he was still experiencing pain in his left leg and having difficulty climbing stairs. (Ahmed Decl., Ex. A at AGO 306.) On September 20, 2011, Plaintiff was examined again by RN Pruitt, who advised him to continue his stretches and apply a warm compress to help alleviate the pain. (Ahmed Decl. ¶ 10.)

- **October 5, 2011**: Plaintiff complained he experienced pain constantly, and he was examined by Defendant Ahmed for a second time. (Ahmed Decl. ¶ 11.) Defendant Ahmed stated that he witnessed Plaintiff walk into the clinic "with a normal gait, comfortably, and without any outward signs of pain or distress." (*Id*.) Plaintiff asserts that Defendant Ahmed was inside the clinic and could not have possibly witnessed him walk into the clinic. (Dkt. 34 at 4.) After reviewing the x-ray in Plaintiff's file, Defendant Ahmed decided to continue Plaintiff's current medication and instructed him about proper diet and exercise techniques to strengthen the spinal muscles. (Ahmed Decl. ¶ 11.)

- **October 24 and 31, 2011**: Plaintiff submitted another HSRF on October 24, 2011, complaining of pain in his left hip, knee, ankle as well as requesting different pain medication and an MRI.[5] (Dkt. 34 at 5.) On October 31, 2011, RN Pruitt examined Plaintiff again pursuant to the aforementioned HSRF. RN Pruitt instructed Plaintiff on how to do proper stretches. (Ahmed Decl. ¶ 10.)

- **December 15 and 16, 2011**: Plaintiff submitted another HSRF complaining of leg pain and requesting an MRI. Plaintiff states the x-ray was inconclusive because it was not an x-ray of his spine. (Dkt. 34 at 6.) Plaintiff was examined by RN Pruitt again, and he reported that Ibuprofen helped somewhat with the pain. (Ahmed Decl. ¶ 14.)

- **January 1 and 5, 2012**: Plaintiff submitted another HSRF on January 1, 2012. (Dkt. 34 at 7.) RN Pruitt examined Plaintiff again and referred him to Defendant Ahmed. (Dkt. 29 at 9.)

- **January 17, 2012**: Plaintiff was examined by Defendant Ahmed. (Ahmed Decl. ¶ 15.) Plaintiff requested morphine. (Dkt. 34 at 7.) Defendant Ahmed explained that he did not detect any swelling or tenderness, and he concluded that Plaintiff did not qualify for a narcotic such as morphine at that time. (Ahmed Decl. ¶ 15.)

- **January 30, 2012**: Defendant Ahmed treated Plaintiff for the final time before he was transferred to a different unit. Defendant Ahmed ordered a medical hold to prevent the transfer until Plaintiff's HCV treatment was complete. (Ahmed Decl. ¶ 16.) Plaintiff was then transferred from CTF North to CTF Central and reassigned to Defendant

¶ 2.)

[5] MRI stands for Magnetic Resonance Imaging.

Hedden. (*Id.*)

- **April 9, 2012**: Plaintiff saw Defendant Hedden for the first time and complained of lower leg pain. (Dkt. 29-2, Hedden Declaration ("Hedden Decl.") ¶ 7; dkt. 34 at 7.) Defendant Hedden diagnosed Plaintiff with moderate to severe scoliosis and a derangement of an intervertebral disk[6] resulting in leg pain. (Hedden Decl. ¶ 7.) Defendant Hedden then prescribed Tramadol, a painkiller, and referred Plaintiff to physical therapy. (*Id.*) Defendant Hedden obtained approval from Defendant Ellis to prescribe Tramadol, a stronger pain medication. (Dkt. 1 at 6.) Plaintiff also requested an MRI at this time, which was denied. (Dkt. 34 at 7.)

- **April 15, 2012**: Defendant Hedden states that Plaintiff requested his prescription for Elavil be discontinued because he said Tramadol was "enough to take care of [his] pain . . . ." (Hedden Decl. ¶ 8.) Accordingly, Defendant Hedden discontinued his prescription for Elavil on April 18. (*Id.*)

- **May 10, 2012**: Plaintiff was examined by RN Estamo regarding excessively dry skin but reported that his pain level was zero on a scale of zero to ten. (Hedden Decl. ¶ 9.)

- **May 23, 2012**: Plaintiff was examined by CTF Physician's Assistant ("PA") Trent for a follow-up appointment regarding Plaintiff's lower back pain. PA Trent diagnosed Plaintiff with left leg radiculopathy.[7] (Hedden Decl. ¶ 10.) PA Trent also noted a possible nerve impingement and ordered prescriptions for Robaxin and Motrin and continued stretches and physical therapy. (*Id.*)

- **June 5, 2012**: At a follow-up appointment with RN Estamo, Plaintiff stated he was in pain and the prescriptions for Tramadol and Ibuprofen were not helping the pain. (Hedden Decl. ¶ 11.)

- **June 11, 2012**: Plaintiff had a follow-up appointment regarding his leg pain with Defendant Hedden. Plaintiff stated that he had no change in strength but his left foot was dragging slightly, and that he had decreased sensitivity in his calf. (Hedden Decl. ¶ 12.) Defendant Hedden ordered a comprehensive "5-view" x-ray for Plaintiff. (*Id.*) From the results of this x-ray, Defendant Hedden diagnosed Plaintiff with radiculopathy in his left leg. (*Id.*) Defendant Hedden discussed proper back care and stretches that could help alleviate the pain.

- **June 15, 2012**: Plaintiff was examined by RN Estamo after falling the night prior, June 14, 2012. (Hedden Decl. ¶ 13.) Plaintiff did not appear to have any injuries. (*Id.*) He reported no pain or discomfort except for some nausea and difficulty breathing. (*Id.*) RN Estamo determined that Plaintiff was "fine," but instructed him to inform the

---

[6] Intervertebral disks are any of the tough elastic disks that are interposed between the centra of adjoining vertebrae and that consist of an outer annulus fibrosus enclosing an inner nucleus pulposus. *See* Merriam-Webster Online Dictionary, retrieved August 12, 2014, from http://www.merriam-webster.com/medlineplus/intervertebral%20disk.

[7] Radiculopathy refers to any pathological condition of the nerve roots. *See* Merriam-Webster Online Dictionary, retrieved August 12, 2014, from http://www.merriam-webster.com/medlineplus/radiculopathy.

6

prison staff of any further pain or discomfort.  (*Id*.)

- **June 20, 2012**: Plaintiff was examined by PA Trent.  Plaintiff told PA Trent about the June 14, 2012 fall, and explained that he was slightly off balance due to problems with his left foot. (Hedden Decl. ¶ 14.)  Plaintiff requested a prescription for morphine for his lower back pain, stating the Tramadol was helpful but did not totally alleviate the pain.  (*Id*.)  PA Trent noted that Plaintiff walked without difficulty and did not require support.  (*Id*.)  PA Trent informed Plaintiff that he could continue taking the Tramadol for pain management, but that he was not eligible for narcotics at that time.  (*Id*.)  PA Trent classified Plaintiff on limited duty work classification status and ordered him an electromyogram/nerve conduction study.  (*Id*.)

- **July 6, 2012**: Plaintiff was examined by Defendant Hedden and she diagnosed him with moderately severe scoliosis, left hip arthropathy (disease of the joint), and subclinical hypothyroidism[8] induced by his lithium medication for his bipolar disorder. (Hedden Decl. ¶ 15.)  Defendant Hedden did not believe a change in medication was necessary at that time.  (*Id*.)  Plaintiff states that the Tramadol was nominally effective for his pain management at this time. (Dkt. 1 at 6.)  Plaintiff asserts that Defendant Hedden refused to request an MRI despite the physical therapists "conclusion that Plaintiff was suffering from lack of mobility in addition to other physical difficulties as a result of the scoliosis and left leg pain."  (*Id*.)

- **July 13, 2012**: Plaintiff was again examined by Defendant Hedden, who noted that Plaintiff had no acute issues.  (Hedden Decl. ¶ 16.)  Plaintiff told Defendant Hedden that the pain was managed adequately so long as he avoided prolonged standing and walking.  (*Id*.)  He also inquired about the electromyography test for evaluating electrical activity in skeletal muscles.  (*Id***.**)  Defendant Hedden emailed the specialized clinic to inquire when the test would be scheduled.  (*Id*.)

- **July 17, 2012**: Defendant Hedden examined Plaintiff again, after he had been placed in administrative segregation.  (Hedden Decl. ¶ 17.)  At this time another doctor from the mental health department intervened because he planned to transfer Plaintiff to a mental health crisis bed.  (*Id*.)  Defendant Hedden noted Plaintiff's current status.  Plaintiff had continued pain in his left hip and extremities due to thoracolumbar scoliosis.  (*Id*.)  Defendant Hedden instructed the laboratory to perform tests to check Plaintiff's hypothyroidism in 4-6 weeks and ordered monitoring of Plaintiff's blood pressure. This July 17, 2012 examination was the last time Defendant Hedden treated Plaintiff prior to the filing of this complaint.

- **Between July 17, 2012 and August 7, 2012**: Plaintiff was transferred from CTF to CSP-Sacramento.

- **December 3, 2012**: Plaintiff filed the instant complaint.

The following set of facts do not involve any of the named Defendants and are only

---

[8] Hypothyroidism is deficient activity of the thyroid gland.  *See* Merriam-Webster Online Dictionary, retrieved August 12, 2014, from http://www.merriam-webster.com/medlineplus/hypothyroidism.

7

included here because Plaintiff asserts these facts are relevant his claim of Defendants' deliberate indifference to his serious medical needs.

- **Also on December 3, 2012**:  An electrodiagnostic[9] study was performed on Plaintiff at California Men's Colony ("CMC") in San Luis Obispo, where he was later transferred to from CSP-Sacramento.  The findings were consistent with a left lumbar radiculopathy that is mild and chronic.  (Dkt. 34 at 35.)

- **December 28, 2012**:  Plaintiff received an MRI of his lumbar and spine without an intravenous MRI contrast agent.[10]  The result of the MRI was as follows: "a large disc herniation into the left L4-5 foramina with severe stenosis, encroachment on the left L4 and V nerve roots, and soft tissue edema noted dorsal to L4 with some edema in the pedicles, but not obvious facture."  (Dkt. 34 at 38.)

- **January 16, 2013**:  Plaintiff was referred to the Pain Management Committee by Dr. Griffin for a consultation.  The committee recommended that Plaintiff continue with the current medications: NSAIDS, Tylenol, Elavil, and Carbamazapine.  The committee additionally recommended Plaintiff begin taking Gabapentin (non-narcotic).  (Dkt. 34 at 39.)

- **February 22, 2013**:  Plaintiff was examined in the clinic at CMC by Dr. Harold D. Segal, who recommended microsurgical laminectomy[11] and discectomy[12] at the L4-5 level, left side.  (Dkt. 34 at 37.)

- **September 16, 2013**:  In his proposed amended complaint, Plaintiff indicates that the aforementioned surgery had taken place, but that "despite a seemingly successful surgery, [his] extreme nerve pain has returned and, again, prevents him from performing the ordinary activities of daily living for any reasonable duration of time without substancial [sic] pain."  (Dkt. 31-1 at 15.)

---

[9] Electrodiagnosis is a method of diagnosis based on electrodiagnostic tests or procedures. *See* Merriam-Webster Online Dictionary, retrieved August 12, 2014, from http://www.merriam-webster.com/medlineplus/electrodiagnosis.

[10] An MRI contrast agent is substance (as a solution of iodine or suspension of barium sulfate) comparatively opaque to x-rays that is introduced into the body (as by injection or swallowing) to contrast an internal part (as the gastrointestinal tract, kidneys, or blood vessels) with its surrounding tissue in radiographic visualization. *See* Merriam-Webster Online Dictionary, retrieved August 12, 2014, from http://www.merriam-webster.com/medlineplus/contrast%20medium.

[11] A laminectomy is the surgical removal of the posterior arch of a vertebra. *See* Merriam-Webster Online Dictionary, retrieved August 12, 2014, from http://www.merriam-webster.com/medlineplus/laminectomy.

[12] A discectomy is the surgical removal of an intervertebral disk. *See* Merriam-Webster Online Dictionary, retrieved August 12, 2014, from http://www.merriam-webster.com/medlineplus/discectomy.

### B.   STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

### C.   EVIDENCE CONSIDERED

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of Defendants' motion for summary judgment, declarations, and exhibits have been

9

filed by Defendants Ahmed and Hedden. (Dkts. 29, 29-1, 29-2.) Meanwhile, Plaintiff verified his complaint by signing it under "penalty of perjury" on December 3, 2012. (Dkt. 1.) On November 1, 2013, Plaintiff submitted an opposition to Defendants' motion for summary judgment and a declaration in support of his opposition signed under "penalty of perjury." (Dkt. 34.) Therefore, for the purposes of this Order, the Court will treat Plaintiff's complaint, opposition to summary judgment, and his declaration as affidavits under Rule 56 of the Federal Rules of Civil Procedure. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

### D. DELIBERATE INDIFFERENCE CLAIM

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical needs and the nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997 (en banc)).

#### 1. Serious Medical Need

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "wanton infliction of unnecessary pain." *McGuckin*, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

Defendants do not dispute that Plaintiff's scoliosis amounted to serious medical needs. Instead, Defendants argue that Plaintiff fails to show that, during the course of their evaluations and treatment, they were deliberately indifferent to his serious medical needs.

#### 2. Deliberate Indifference

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate

10

it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In order to establish deliberate indifference, a plaintiff must show a purposeful act or failure to act on the part of the defendant and a resulting harm. *McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provided medical care. *See McGuckin*, 974 F.2d at 1062.

In order to prevail on a claim of deliberate indifference to medical needs, a Plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to Plaintiff's health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Here, Plaintiff claims that Defendants Ahmed, Hedden, and Ellis were deliberately indifferent in providing treatment for his scoliosis. Specifically, Plaintiff claims that Defendants Ahmed and Hedden refused to prescribe strong enough pain medication and refused to order an MRI on Plaintiff's spine. (Dkt. 1 at 5-6.) Plaintiff further argues that Defendant Ellis, who was CTF's CEO of Health Care Services, authorized the Tramadol prescription for Plaintiff; however, that particular pain medication apparently did not alleviate his pain. (*Id.* at 6.) Plaintiff also claims that Defendant Ellis may have "discouraged referrals for non-formulary medication or services . . . ." (*Id.*; Dkt. 39 at 18.)

To the contrary, the record shows that Defendants Ahmed and Hedden provided adequate care to Plaintiff. Defendants Ahmed and Hedden examined Plaintiff on multiple occasions and gave him adequate treatment for his scoliosis. Defendant Ahmed personally examined Plaintiff four times, and his assistant, RN Pruitt, examined Plaintiff four more times on behalf of Defendant Ahmed. Defendant Ahmed prescribed three types of pain medication for Plaintiff and instructed Plaintiff on dietary changes and stretches for a long term cure to Plaintiff's scoliosis. Defendant Ahmed also concluded that in his medical judgment, prescribing a stronger painkiller was

11

inadvisable, and the proper treatment for Plaintiff did not include indefinite prescription of painkillers. (Ahmed Decl. ¶ 18.) In addition, Defendant Ahmed explained that painkillers were intended to alleviate the pain not eliminate it, because long-term pain management of scoliosis requires stretches and building muscle strength. (*Id*.) Meanwhile, Defendant Hedden examined Plaintiff six times. RN Estomo and PA Treat examined Plaintiff (on behalf of Defendant Hedden) three times and twice, respectively. Defendant Hedden prescribed a stronger pain medication than Defendant Ahmed, and ordered a "5-way" x-ray to get a more complete image of Plaintiff's injury. In sum, Plaintiff's complaints were not ignored by Defendants Ahmed and Hedden, who continued to give him follow-up appointments and continued Plaintiff's prescription for painkillers while simultaneously recommending stretches for long term relief. Therefore, the Court finds that Defendants Ahmed and Hedden were not deliberately indifferent because they did not deny or delay treatment of Plaintiff's serious medical needs. *Cf. Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed where medical staff and doctor knew of head injury, disregarded evidence of complications to which they had been specifically alerted and without examination, prescribed contraindicated sedatives).

Plaintiff further argues that had Defendants Ahmed and Hedden ordered an MRI, they would have discovered the herniated disc earlier. The record shows that, at the time Plaintiff had requested for an MRI to be ordered, Defendant Ahmed indicated that an MRI was not medically necessary because it would not have provided any additional information pertinent to Plaintiff's treatment, which included treatment for "moderately severe" scoliosis. (Ahmed Decl. ¶ 17.) However, Plaintiff argues that an MRI would have led to another course of treatments, and that Defendants' "course of treatment was medically unacceptable and led to greater pain that lingered for an additional 15 months." (Dkt. 34 at 20.) Plaintiff argues that he would not have experienced an "excessive risk to [his] health as [he] eventually found it necessary to undergo back surgery . . . ." (*Id*.) The Court finds that Plaintiff's argument evidences a difference of medical opinion, i.e., if Plaintiff had received different treatment from Defendants Ahmed and Hedden, then he would not have suffered more unnecessary pain. First, the Court notes that Plaintiff assumes that the herniated disc was present when he was initially examined by Defendants Ahmed

12

and Hedden, but they did not notice it. Or, alternately, Plaintiff assumes that Defendants Ahmed and Hedden's refusal to order an MRI worsened his condition, eventually causing him to suffer from a herniated disc. However, Plaintiff puts forth no facts or evidence to support either theory. Plaintiff merely introduces documents showing that on December 28, 2012, Plaintiff received an MRI, that the MRI results indicated he suffered from a herniated disc, and that on February 22, 2013, Dr. Segal recommended surgery. (Dkt. 34 at 38, 37.) Plaintiff's conclusory allegation – that Defendants Ahmed and Hedden's course of treatment caused him to suffer lingering pain for an additional fifteen months – is not supported by any medical evidence. Plaintiff's conclusory allegations unsupported by factual data are insufficient to defeat Defendants' motion for summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding the district court did not err in granting summary judgment because plaintiff failed to meet her burden of proof of providing specific facts to show that the force used was unreasonable).

Even if Plaintiff should have received different treatment for his medical needs, a difference of opinion as to the urgency and treatment of his medical needs is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi*, 391 F.3d at 1058, 1059-60; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). Although the medical treatment Plaintiff received may not have been what he considered proper treatment, he presents no evidence that Defendants Ahmed and Hedden were deliberately indifferent to his serious medical needs. Rather, they: (1) diagnosed his scoliosis; (2) monitored his status with follow-up treatments; and (3) provided prescription pain medication and advised him about proper exercise techniques to strengthen the spinal muscles. Thus, Plaintiff has failed to provide evidence regarding an essential element of his deliberate indifference claim against Defendants Ahmed and Hedden.

Meanwhile, Plaintiff's only allegation against Defendant Ellis is that he authorized Plaintiff's Tramadol prescription and may have discouraged referrals for "non-formulary" medication or services. Plaintiff asserts no other facts regarding Defendant Ellis's actions. Moreover, Defendants argue that there is no evidence that Plaintiff was ever treated by Defendant

13

Ellis or even met him.[13] Although the medical treatment authorized by Defendant Ellis may not have been what Plaintiff considered proper treatment, Plaintiff presents no evidence that Defendant Ellis was deliberately indifferent to his serious medical needs. Rather, Defendant Ellis approved pain medication to ease Plaintiff's pain. Therefore, the Court finds that Defendant Ellis was not deliberately indifferent because he did not deny or delay pain medication to treat Plaintiff's scoliosis. And, even if Plaintiff does not agree with Defendant Ellis's choice of pain medication or decision to discourage "non-formulary" medication or services, a difference of opinion as to the treatment of Plaintiff's medical needs is insufficient, as a matter of law, to establish deliberate indifference. *See id.* Because Plaintiff does not assert any facts of Defendant Ellis' deliberate indifference to Plaintiff's medical needs, Plaintiff has failed to provide evidence regarding an essential element of his deliberate indifferent claim against this Defendant.

It is true that Plaintiff need not produce direct evidence that Defendants Ahmed, Hedden, and Ellis knew their actions were medically unacceptable, Plaintiff may rely on indirect evidence and he is entitled to have all reasonable inferences drawn in his favor. However, the United States Supreme Court has admonished that such inferences must be reasonable. *Matsushita Elec. Indus. Co, Ltd.. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 632 (9th Cir.1987). Moreover, reasonable inferences are not drawn from thin air and they cannot be drawn from conclusory allegations. Reasonable inferences must be drawn from evidence. Here, Plaintiff has not produced any evidence showing, directly or indirectly, that either Defendants Ahmed, Hedden, or Ellis caused Plaintiff prolonged pain, a herniated disc, or eventually caused him to have back surgery. Accordingly, the Court finds Plaintiff's claim that these Defendants caused Plaintiff to suffer greater pain and caused him to undergo back surgery is unsubstantiated, because the record is devoid of any declaration or medical evidence that these Defendants' failure to prescribe stronger pain medication or refusal to

---

[13] Defendants further argue that Defendant Ellis should not be liable in his supervisory capacity; however, the Court finds this argument to be unavailing. As explained above, in its Order of Service, the Court originally found that Defendant Ellis was not being sued in his supervisory capacity because Plaintiff had linked this Defendant to his deliberate indifference claim. (Dkt. 8 at 2.)

14

order an MRI caused him harm.

Finally, the Constitution does not require that Defendants provide Plaintiff with successful or perfect treatment. It requires only that Defendants do not act with deliberate indifference. That Defendants could not stop Plaintiff's pain or cure his scoliosis entirely is not sufficient to show deliberate indifference. They were aware of his condition and sought to treat it with appropriate measures.

In sum, Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claim that Defendants Ahmed, Hedden, and Ellis's actions rose to the level of deliberate indifference to his serious medical needs. Accordingly, Defendants Ahmed, Hedden, and Ellis are entitled to summary judgment. Therefore, their motion for summary judgment is GRANTED.

## **CONCLUSION**

For the foregoing reasons,

1. The Court DENIES Plaintiff's motion for leave to file an amended complaint (dkt. 31); and GRANTS Plaintiff's motion for leave to file a response to Defendants' motion for summary judgment (dkt. 39).

2. The Court GRANTS Defendants' motion for summary judgment (dkt. 29).

3. All other pending motions are DENIED as moot, including Plaintiff's motion for appointment of counsel (dkt. 36) and his motion for leave to file a sur-reply[14] (dkt. 40).

4. The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

5. This Order terminates Docket nos. 29, 31, 36, 39 and 40.

IT IS SO ORDERED.

Dated: August 14, 2014

_____
YVONNE GONZALEZ ROGERS
United States District Court Judge

P:\PRO-SE\YGR\CR.12\Thornberry6129.grantMSJ.docx

---

[14] In any event, because the Court finds that Plaintiff has been given adequate opportunity to respond to Defendants' motion for summary judgment, his motion for leave to file a sur-reply (dkt. 40) is DENIED.

15